# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

DANIEL L. JOHNSON,

        Plaintiff,

v.                                    No. CIV 18-152-RAW-SPS

MARTY GARRISON, et al.,

        Defendants.

## OPINION AND ORDER

This action is before the Court on Defendants' motion to dismiss Plaintiff's complaint as barred in part by the statute of limitations and for his failure to exhaust the administrative remedies for his claims. Plaintiff, an inmate in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Davis Correctional Facility (DCF) in Holdenville, Oklahoma, brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at that facility. The defendants are three DCF officials: Marty Garrison, Investigator; Officer Berry, Unit Manager; and Terri Underwood, Grievance Coordinator.

Plaintiff's complaint is disorganized and difficult to understand. The Court has carefully reviewed the record and construed Plaintiff's pleadings liberally. *Haines v. Kerner*, 404 U.S. 519 (1972). This relaxed standard, however, does not relieve his burden of alleging sufficient facts on which a recognized legal claim could be based. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

Plaintiff sets forth the nature of the case as follows: "The context of this case is

base [sic] on the discrimination of the handling of of [sic] the investigation into my "PREA"[1] matter of the Harassment of Unit Manager Berry. The handleing [sic] of the grievance that hindered the due process of my complaint as well." (Dkt. 1 at 12).

Plaintiff alleges that on or about January 13, 2016, he was working in the DCF rotunda as an orderly, when Defendant Unit Manager Berry and Berry's wife came around the corner from the law library. Berry was talking to his wife and looking at Plaintiff as he passed by. Plaintiff claims Berry told his wife in a very demeaning, joking manner not to pass a note from Plaintiff to Plaintiff's "girlfriend," who was another prisoner. Plaintiff claims the statement was made to shame Plaintiff in front of Berry's wife. *Id*. at 22.

On February 16, 2016, Plaintiff went to Assistant Warden Bonner's office to request a move within the facility. Bonner was not authorized to permit moves, so he called Defendant Berry to the office to discuss Plaintiff's request. *Id*. at 22. While he was in Bonner's office, Berry said Plaintiff was a "punk chaser," which meant Plaintiff was "trying to get moved to follow a homosexual or something of that nature." Plaintiff asserts he had an ongoing problem with Berry's references to Plaintiff's sexual orientation. *Id*. at 24.

Plaintiff further alleges that on March 7, 2016, he submitted a PREA complaint directly to Defendant Underwood. He spoke with Defendant Garrison and Mr. Yendale on March 10, 2016, in Garrison's office. Garrison stated the incident was not a PREA matter, and Plaintiff believed Garrison would be biased against him. The conversation

---

[1] Prison Rape Elimination Act, 34 U.S.C. § 30301.

was not documented. *Id*. at 14.

Plaintiff asserts Defendant Underwood mishandled the March 7, 2016, grievance. He contends she should have understood that a grievance may be submitted directly to the reviewing authority without the informal resolution process, when it is of a sensitive nature or when there is substantial risk of personal injury, sexual assault, or the existence of other irreparable harm. *Id*. at 16.

He also complains that Defendant Garrison discriminated against him by mishandling a PREA investigation after Garrison met with Plaintiff on March 10, 2016. Plaintiff alleges he filed several Requests to Staff (RTSs) in April about the issue, because Garrison had not taken Plaintiff's claim seriously. Garrison's response stated Plaintiff's PREA claim was unfounded, although Garrison's previous response to one of the RTSs stated the incident was under investigation. Garrison also stated Plaintiff was being too sensitive about the matter, which Plaintiff considered an unprofessional response. *Id*. at 15.

Plaintiff sent an RTS about the incident, advising that evidence could be viewed on the camera footage, along with the names of two witnesses. Garrison, however, failed to conduct a proper investigation and interview the witnesses. *Id*. at 15.

**Standard of Review**

Defendants have moved for dismissal pursuant to Fed. R. Civ. P. 12(b)(6). The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). To avoid dismissal

3

for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed. *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines*, 404 U.S. at 520. The generous construction to be given to the pro se litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

With these standards in mind, the court turns to the merits of Defendants' motion.

**Statute of Limitations**

The record shows that on June 27, 2016, Plaintiff initially filed this action as a petition in Oklahoma County District Court Case No. CV-2016-1367. *Johnson v. Berry*, No. 116,301 slip op. at 2 (Apr. 12, 2018) (Dkt. 16-3 at 4). He presented the same allegations against the same defendants as presented in this action, except he also named DCF Warden Tim Wilkinson as a defendant. Plaintiff, however, served only Defendant Berry. *Id.* at 2, n.1. On April 25, 2017, the state district court granted Berry's motion to dismiss. *Johnson v. Berry*, No. CV-2016-1367, slip op. at 1 (Okla. County Dist. Ct. Apr. 25, 2017) (Dkt. 16-2). The petition was dismissed without prejudice, because Plaintiff had failed to plead exhaustion of administrative remedies, and he had failed to comply with the Governmental Tort Claims Act notice requirement. *Id.* Plaintiff appealed the dismissal to the Oklahoma Supreme Court, and on April 12, 2018, that Court entered an order affirming the district court's decision. *Johnson*, No. 116, 301, slip op. at 9.

Plaintiff claims in his response to the motion to dismiss that as a pro se litigant, he did not understand the procedure for serving Defendants Garrison and Underwood in his state lawsuit. (Dkt. 18). He, however, has presented no authority for waiving service based on a pro se plaintiff's misunderstanding of the service process.

Defendants allege Plaintiff's claims against Garrison and Underwood are barred by the statute of limitations, but the claims against Defendant Berry were timely filed. The

5

statute of limitations for a civil rights cause of action in Oklahoma is two years. *Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988). Plaintiff filed this action on May 14, 2018, and a plain reading of the complaint shows his issues with Garrison and Underwood occurred in March 2016.

Defendants Garrison and Underwood contend that to the extent Plaintiff may assert the applicability of the Oklahoma saving statute, this Court should deny such claim with respect to them. The statute reads:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his
> representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

Okla. Stat. tit. 12, § 100.

Garrison and Underwood maintain that because they never were served in the state action, they are under different time constraints. The Oklahoma statute governing service of defendants states:

> If service of process is not made upon a defendant within 180 days after the filing of the petition and the plaintiff has not shown good cause why such service was not made within that period, the action shall be deemed dismissed as to that defendant without prejudice.

Okla. Stat. tit. 12, § 2004(I).

Plaintiff filed the state-court action on June 27, 2016. One hundred eighty days from June 27, 2016 is December 24, 2016. Therefore, Defendants Underwood and

Garrison were, by statute, deemed dismissed on December 24, 2016. Plaintiff then had one year, or until December 24, 2017, to refile an action against these two defendants. Because this action was filed on May 14, 2018, Plaintiff's allegations against Defendants Underwood and Garrison are barred by the statute of limitations.

Plaintiff's claims against Defendant Berry arose in January 2016. Because the state court case against Berry was dismissed without prejudice, the saving statute gave Plaintiff one year from the date of dismissal on April 12, 2018, to refile the action. Plaintiff, therefore had until April 12, 2019, to file this civil rights action against Berry. The complaint, filed on May 14, 2018, was timely for Defendant Berry.

**Exhaustion of Administrative Remedies**

Defendant Berry alleges Plaintiff has failed to exhaust the administrative remedies for any claims against him. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002)

(citation omitted). In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties. *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, effective November 20, 2014, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) to the law library supervisor/designated staff member within seven calendar days of the incident, alleging only one issue per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the reviewing authority (warden's office), asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance within 15 calendar days of the response date for the RTS. Medical grievances must be submitted to the facility correctional health services administrator. If the grievance also does not resolve the issue, the inmate may appeal to the Administrative Review Authority (ARA) or the Health Services Administrative Review Authority. The administrative process is exhausted only after all of these steps have been taken. (Dkt. 16-1).

Defendant Berry sets forth Plaintiff's grievance history as follows:

**(1) Grievance No. 2016-1001-0072-G:** On March 7, 2016, Plaintiff submitted

Grievance No. 0072. He asserted a PREA claim and complained of Unit Manager Berry's behavior. On March 23, 2016, the grievance was returned unanswered to Plaintiff, because it had not been properly completed, there was no attempt to resolve the complaint informally, and the grievance lacked the date of the incident. He was given the opportunity to correct and re-submit the grievance within ten days, however, he failed to do so. (Dkt. 16-4 at 2-6).

The Court notes that the copy of the grievance clearly indicates the incident occurred on February 16, 2016. *Id.* at 4. Plaintiff, however, apparently did not appeal the grievance denial to the ARA, thus this grievance was not properly exhausted.

**(2) Grievance No. 2016-1001-0077-G:** On March 4, 2016, Plaintiff submitted an RTS to the Chief of Security regarding having protective measures taken to ensure his safety. The Chief responded: "Denied. You have no credible threat to your safety at DCF. You were offered alternative housing within the facility." *Id.* at 11.

On March 10, 2016, Plaintiff filed Grievance No. 0077. The grievance made no mention of Unit Manager Berry or any of the specific allegations presented in this lawsuit. Under the grievance form's section for requested action, Plaintiff wrote, "Put me on protective measures for concern's [sic] for the well-being of my safety." On March 23, 2016, the grievance was returned unanswered, noting it was not properly completed and instructing Plaintiff to correct and resubmit it. Plaintiff made the appropriate corrections and resubmitted the grievance on March 30, 2016. The warden denied the resubmitted

9

grievance on April 14, 2016, stating: "After an investigation of the matter by Mark Gentry, Chief of Security, it was determined that there was no credible threat to I/M Johnson's safety. I/M Johnson will be offered alternative housing within the facility." *Id.* at 8-16.

Plaintiff appealed to the DOC ARA where the warden's decision was affirmed on May 9, 2016. *Id.* at 7. He exhausted the issue of whether he should be placed in administrative segregation for "protective measures" purposes. He, however, did not raise that issue in this action, and no issues relevant to this case were exhausted through this grievance.

**(3) Grievance No. 2016-1001-0096-G:** On March 28, 2016 Plaintiff filed another grievance wherein he made essentially the same allegations as those raised in Grievance No. 0072. He attached to the grievance an RTS, also dated March 28, 2016, which had not been properly submitted and which lacked a proper response. The grievance was returned to Plaintiff unanswered on March 31, 2016, with notations of the deficiencies and that Plaintiff was out of time. *Id.* at 19-24. No issues were exhausted by this grievance.

**(4) Grievance No. 2016-1001-0098-G**: Plaintiff submitted Grievance No. 0098 on March 30, 2016, which related to the status of Grievance No. 0077. The grievance was not properly submitted and was returned to the him unanswered. *Id.* at 25-29. No issues were exhausted with this grievance.

**(5) Grievance No. 2016-1001-0099-G**: Plaintiff submitted Grievance No. 0099 on

10

March 30, 2016. The grievance concerned allegations that a staff member purposely tripped him and caused him to fall. Plaintiff sought review of the videotape by someone at DOC. The grievance was returned unanswered, because it was not properly completed. Plaintiff was given the option to resubmit the grievance, but he failed to do so. *Id.* at 31-36. The grievance exhausted no issues.

**(6) Grievance No. 2016-1001-0106-G**: On April 6, 2016, Plaintiff submitted Grievance No. 0106, complaining that Investigator Garrison was not taking his PREA complaints seriously. Plaintiff requested "[t]hat Mr. Garrison have someone objective sit-in to help him do a more ethical and thorough job!" *Id.* at 40-41. The Warden responded to the grievance on May 9, 2016 as follows:

> I/M Johnson requested that Marty Garrison, Facility Investigator, have someone objective sit in to help him do a more ethical job regarding a PREA incident. After an investigation of the matter by Marty Garrison, Facility Investigator, it was determined that the charges by I/M Johnson regarding a PREA incident were unfounded. I/M Johnson's request is DENIED.

*Id.* at 38.

Plaintiff appealed the decision to the DOC ARA, where the warden's decision was affirmed, and relief was denied on June 7, 2016. *Id.* at 37. Plaintiff exhausted the issue of having someone present with Investigator Garrison during the PREA investigation. *Id.* at 37-41.

Plaintiff asserts in the complaint that he was subjected to discrimination by Defendant Garrison's not taking his PREA complaint seriously. Plaintiff exhausted this

11

claim, however, he did not serve Defendant Garrison in this matter.

**(7) Grievance No. 2016-1001-0112-G:** On April 12, 2016, Plaintiff submitted Grievance No. 0112, complaining that Unit Manager Hicks dismissed his request for an investigation. He requested the following relief: "I would like U/M Hicks to have a more thorough look into my make before dismissing it without proper cause." On April 22, 2016, the grievance was returned unanswered with a notation that Plaintiff had not followed the instructions from U/M Hicks in the RTS. Plaintiff was provided an opportunity to resubmit, however he chose not to do so. *Id.* at 42-47. No issues were exhausted by this grievance.

**(8) Grievance No. 2016-1001-0133-G:** On April 29, 2016, Plaintiff submitted Grievance No. 0133, complaining he was being discriminated against regarding his request for protective measures and the tripping incident. Plaintiff requested that the officials "inquire into this very unusual treatment." On the date of submission, the grievance was returned unanswered, noting that Plaintiff had not included an RTS and had filed the grievance out of time. *Id.* at 48-53. No issues were exhausted by this grievance.

**(9) Grievance No. 2016-1001-0135-G:** On April 29, 2016 Plaintiff submitted Grievance No. 0135, complaining he was being assigned to the facility's Intensive Supervision Unit (ISU) program. He asked the reviewing authority "[t]o correct the mistake or go to court . . . get the court's fix it." On April 29, 2016 the grievance was returned unanswered, noting multiple procedural errors, including the grievance's being

filed out of time. *Id.* at 54-58. This grievance exhausted no issues.

**(10) Grievance No. 2016-1001-0191-G:** Grievance No. 0191, filed on June 30, 2016, concerned a June 23, 2016, incident when Plaintiff was handcuffed. The grievance was returned unanswered for Plaintiff's failure to attempt informal resolution of the issue. He was allowed time to properly resubmit the grievance, which he failed to do. *Id.* at 60-62. No issues were exhausted by way this grievance.

For Plaintiff's claims to be considered on the merits, he must have pursued to conclusion the exhaustion of administrative remedies pursuant to OP-090124. "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation omitted) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'--rules that are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88).

After careful review, the Court concludes Plaintiff has failed to exhaust the administrative remedies for his claims against Defendant Berry.

**Injunctive Relief**

Finally, Plaintiff has filed a motion for a permanent injunction to stop "a campaign of harassment from all CCA (Core Civic) Davis Correctional Facility." (Dkt. 17 at 1). He asks the Court "to restrain or stop all retaliation by any future campaign of harassment due to inmate 'Johnson' following his due process right's for relife in which is consider 'protected conduct" for filing 1983 claim or grievance to process complaint." *Id*. (errors in original).

To be entitled to injunctive relief, the movant must establish a violation of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). Plaintiff, however, has failed to plead any facts to sustain a finding of an ongoing constitutional violation. He thus is not entitled to injunctive relief.

**Conclusion**

After careful review, the Court finds Plaintiff's allegations against Defendants Underwood and Garrison are barred by the statute of limitations, and Plaintiff has failed to exhaust the administrative remedies for the claims against Defendant Berry. Therefore, all claims must be dismissed. This dismissal shall count as a "prior occasion" or "strike," pursuant to 28 U.S.C. § 1915(g).

**ACCORDINGLY**, the defendants' motion to dismiss (Dkt. 16) is GRANTED, and Plaintiff's motion for permanent injunction (Dkt. 17) is DENIED. All remaining pending motions are DENIED as moot. This dismissal shall count as a "PRIOR OCCASION" or

"STRIKE," pursuant to 28 U.S.C. § 1915(g).

**IT IS SO ORDERED** this 25th day of March 2019.

_Ronald A. White_
Ronald A. White
United States District Judge
Eastern District of Oklahoma